[Civil No. 1743.   Filed May 3, 1920.]

[189 Pac. 627.]

# W. M. TIMMONS, Appellant, v. A. A. McKINZIE, Appellee.

1. APPEAL AND ERROR—ASSIGNMENTS REFERRING TO IMMATERIAL MATTERS NOT REVIEWED.—Assignments of error referring to immaterial and irrelevant matters will not be reviewed.

2. CONTRACTS—TRIAL—COURT MUST INTERPRET WRITTEN CONTRACT AND INSTRUCT AS TO MEANING.—In an action involving a written contract, it is the duty of the court to interpret the contract and instruct the jury as to the meaning of every controverted clause and condition contained therein, and the legal effect of the same.

3. LANDLORD AND TENANT—INSTRUCTION AS TO DUTY OF LANDLORD TO REPAIR UNDER LEASE COVENANT, WAS PROPER.—In an action on a note given for rent, where defendant counterclaimed for damages, lease providing "the party of the first part agrees to put all ditches and laterals and fences in good condition," and court properly instructed: "Contracts are presumed to be made for some particular reason. If the plaintiff contracted . . . to put the fences and ditches in good condition, the presumption . . . is that

---

3. For authorities passing on the question of liability of landlord for injury to tenant's property from breach of his covenant to repair, see notes in 16 L. R. A. (N. S.) 738; 15 Ann. Cas. 563.

there was some reason for such covenants on his part, and he is strictly held to the fulfillment of the same, . . . and, if lessor violates said covenant so that the lessee is deprived of the use of the premises as contemplated," the latter is entitled to damages.

4. LANDLORD AND TENANT—INSTRUCTION AS TO LIABILITY OF LESSOR FOR RENT ON BREACH PROPER.—In an action by a lessor on a note given for rent, an instruction that if the lessor violated contract to put ditches in good condition, "so that the lessee is deprived of the use of the premises as contemplated, then in that case the lessee would be entitled to damages for all actual damage sustained, included in which would be the rent paid, if any," was proper, and was not erroneous as directing the jury to award to defendant as part of the damages assessed all rents paid by defendant, if any, in the sole event the jury found that the covenant of repairs was breached.

5. LANDLORD AND TENANT—LESSOR DID NOT HAVE UNTIL THE EXPIRATION OF LEASE TO REPAIR DITCHES AND LATERALS.—Under a lease whereby lessor agreed to put all ditches, laterals and fences in good condition, lessor did not have until the expiration of the lease in which to repair the ditches, laterals, etc.

6. APPEAL AND ERROR—A WORD USED WITHOUT MEANING HARMLESS.— The use of the word "other" qualifying the word "damages" in an instruction without an object to operate upon, therefore being without meaning, was harmless; the instruction otherwise being clear.

7. APPEAL AND ERROR—ALLEGED GROUNDS FOR NEW TRIAL NOT SEPARATELY STATED IN ASSIGNMENTS NOT REVIEWABLE.—Where a motion for a new trial contained six separate paragraphs setting forth allegations of more than one ground for new trial, each of which alleged grounds is not separately and distinctly stated in the assignments of error, such assignments are not sufficient, under Civil Code of 1913, paragraph 1261, and rules of court relating to assignment of Errors.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

STATEMENT OF FACTS.

The appellant, as plaintiff, commenced this action to recover on a promissory note for $600. The defendant admitted the execution and delivery of the note; set forth the facts that the note, together with $400, was paid to the plaintiff as rent for a term of lease of a forty-acre tract of land in said Maricopa

county, the term beginning February 5, 1918, and
ending February 5, 1919; that the lease is in writing;
that the plaintiff lessor covenanted, promised and
agreed in said lease "to pay all taxes and water
charges to be assessed on said premises during said
term" and " . . . to put all ditches and laterals and
fences in good condition, party of the second part
agrees to have or leave ditches and fence in good
condition at expiration."

The defendant alleges breaches of both said cove-
nants and claims damages resulting to him of $1,200.
The plaintiff admits the making of the lease; alleges
that defendant retained possession of the premises;
that plaintiff performed the covenants contained in
the lease in the particulars that plaintiff put all the
ditches and laterals in repair; and that plaintiff did
repair the fences; and that plaintiff did purchase
water for the irrigation of the premises and per-
formed all things required of him by said lease con-
tract; that no fences are required for the reason that
the premises are within a no-fence district; that de-
fendant suffered no damages from lack of a proper
fence, or for lack of proper or adequate ditches or
laterals, nor for failure of plaintiff to purchase irri-
gation water. Plaintiff alleges that plaintiff suffered
loss because defendant refused to deliver possession
of the premises during the month of July, 1918, to a
purchaser of the land, thereby preventing plaintiff
from selling the land for $200 per acre. As a consid-
eration to deliver possession to such purchaser, plain-
tiff offered to cancel said $600 note sued upon, and
defendant refused to accept the note and abandon
the lease and surrender possession. Upon such issues
the cause was tried before a jury and a verdict re-
turned for the defendant for $450 and recommended
the cancellation of said note. A motion for a new
trial was timely made and the new trial refused.

From the judgment and order refusing a new trial, the plaintiff appeals.

Mr. M. T. Phelps, for Appellant.

Messrs. Gandy & Cunningham, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above.)—The issues are reduced by the pleadings to the inquiry whether the plaintiff lessor violated his promises contained in the lease, whereby he agreed to pay all the water charges to be assessed "on said premises during said term" of lease; and the further promise that lessor "agrees to put all ditches and laterals and fences in good condition, . . . " and, if plaintiff violated either or both of said agreements of the lease, what damage, if any, resulted to the defendant?

At the beginning of the consideration of this record and the questions raised, it will serve to clarify the matter by disposing of certain matters which have been discussed at some length by counsel, but which are unimportant to the inquiry. It is well to observe that the appellee agreed to pay to the appellant $1,000 as a consideration for the grant to him of a lease for a term of one year, ending February 5, 1919, and that the said consideration was paid as contemplated by means of cash money in the sum of $400, paid at the time of closing the deal, and by the making and delivery of the note for $600, the note sued on. The note was made and delivered to and received by the lessor as payment in full of the consideration mentioned in the lease. The note was not paid at maturity, and the payor resists payment upon the grounds that his damages resulting from the plaintiff's failure to perform the promises contained in the lease exceeds the amount of the note by $600. In other words, the defendant claims damages in the

sum of $1,200, and seeks to set off his damages suffered against the note. No question of failure of consideration for the note is involved in the case, although the parties devote some space in their briefs to that matter. I repeat that the inquiry in the lower court concerned the lease and whether or not any of its covenants have been breached by the lessor, and, if so, the amount of damages resulting to the lessee for such breach or breaches.

I will confine my discussion to matters pertaining to the subject matter of said inquiry wherein controverted questions are involved, viz., the breach of covenant and the measure of damages resulting therefrom.

The appellant's assignments of error referring to matters other than the breach of covenant and resultant damages will not be discussed because they concern immaterial and irrelevant matters. The discussion will be limited to assignments 7, 8, and 18. These assignments (7 and 8) deal with the instructions of the court which were given, and (18) with the order refusing a new trial.

Assignment 7 complains that the court erroneously instructed the jury as follows:

"Contracts are presumed to be made for some particular reason. If the plaintiff contracted in the lease to put the fences and ditches in good condition, the presumption of the law is that there was some reason for such covenants on his part, and he is strictly held to the fulfillment of the same. He cannot avoid the obligation or shift it to the shoulders of the lessee, and, if the lessor violates said covenant so that the lessee is deprived of the use of the premises as contemplated, then in that case the lessee would be entitled to damages for all his actual loss sustained, included in which would be the rent paid, if any."

The appellant points out, as the reasons why this instruction is error, that the court informs the jury that the repair clause in the contract of lease raised

the presumption of law that the fences and ditches were in bad condition when defendant took possession of premises, and for the further reason that it directed the jury to award defendant, as a part of the damages assessed, all rents paid by defendant, if any, in the event the jury finds that the covenant of repairs was in fact breached by the plaintiff.

It is the duty of the court to interpret the contract and instruct the jury as to the meaning of every controverted clause and condition contained therein, and the legal effect of the same. Certainly, the words of the repair clause reading, "The party of the first part agrees to put all ditches and laterals and fences in good condition, party of the second part agrees to leave ditches and fences in good condition at expiration," can be given but one fair meaning, and that is a duty presently imposed on the lessor, a duty to "put" the ditches, laterals and fences in good condition. The ditches, laterals and fences would not be required to be "put" in good condition unless they were at the time in bad condition. The interpretation placed upon the lease by the court is a fair interpretation of the language used, and therefore the objection is without merit.

The further reason urged why the instruction is erroneous, viz., "that it directed the jury to award to defendant, as a part of the damages assessed, all rents paid by defendant, if any, in the event the jury finds that the covenant of repairs was in fact breached by the plaintiff." This is not a correct interpretation of the instruction, as will be observed. The instruction specifically contains the condition: "If the lessor violates said contract so that the lessee is deprived of the use of the premises as contemplated, then in that case the lessee would be entitled" to recover the rent paid by him, if any. The appellant overlooks the condition that is expressed and the existence of which gives the right to recover the rent

paid. The instruction is not subject to either objection. There is no serious contention that the plaintiff did put the ditches and laterals and fences in good condition, or that the plaintiff did pay for irrigation water in sufficient time to justify the defendant in planting a crop on the premises. Appellant contends that he had until the expiration of the lease in which to repair the ditches, laterals, and fences or in which to pay for the water, and, if the lessee did retain possession and not offer to rescind the contract for such omission, the expense of making such repairs was slight and should have been done by lessee and applied on the rent. That lessee did not require water on the ground for a first plowing, and, as a consequence, the lessee's own fault caused him damages.

Assignment No. 8 predicates error upon the instruction given as the same appears in the abstract of record at designated folios, "for the reason that the term 'other damages' is confusing and uncertain and assumes that other damages had been sustained by defendant, and, though presumably attempting to instruct the jury as to the measure of damages, wholly fails to lay down any standard by which such damages may be measured." Turning to the folios of the abstract of record designated (folios 504, 505), we find an instruction as follows:

"In considering the other damages in this case, you are to take into consideration the rental value of the premises, which has been established, so far as this action is concerned, by the agreement of the parties to be $1,000, which, under the contract of lease introduced in evidence, the defendant in this case agreed to pay, and of which he has already paid $400, promising to pay $600 more later on, and for which a promissory note was given and for the recovery of which note this action is brought. You may take into consideration any labor or money, if any, you find the defendant expended on said premises. If you find from the evidence in this case that the plaintiff failed

in any respect to perform the covenants, or any of the covenants, contained in the lease, on his part to be performed, and that by reason of such failure and nonperformance of the covenants the defendant was damaged, then the defendant would be entitled to recover as against the plaintiff such amount and have such amount offset primarily against the amount claimed under said promissory note, and, secondarily, as an independent judgment against said plaintiff if the amount of said damages exceeded the amount due upon said promissory note.''

The words ''other damages,'' claimed to be confusing and uncertain, and an assumption by the court that defendant had sustained other damages, immediately follow the instruction complained of in assignment No. 7. The court had theretofore said to the jury that the defendant, after proving the covenants of the lease had been breached by the plaintiff, ''must also prove that he was damaged, and to what extent, if any at all''; then instructed, as in said assignment 7, to wit:

'' . . . And if the lessor violates said covenants so that the lessee is deprived of the use of the premises as contemplated, then in that case the lessee would be entitled to damages for all his actual loss sustained, included in which would be the rent paid, if any.''

The use of the word ''other'' qualifying the word ''damages'' would seem to refer to the damages other than mentioned in the preceding charges—the actual loss sustained by the defendant from breaches of the covenants of the lease by the plaintiff ''included in which would be the rent paid, if any.'' Such idea is dispelled, however, by the instruction specifying the item of rent paid, and the means by which it was paid; the items of labor performed and money expended on the premises, if any—these are the elements of damages marking the extent of the lessee's aggregated damage directly attributable to the breach of covenants in this case, as limited by the court's instructions. The word ''other'' seems to have been

used without meaning or reference to anything at all. If the expression "other damages" was not immediately followed with reference to the item of rent paid as an element of recovery, and proceeded to instruct the jury that they "may also take into consideration" labor and money expended, no uncertainty would be noticeable. It seems that the word "other" was used without meaning, and we can see no injury done by its use. Otherwise the instruction is clear and free from objections urged. No reversible error was the result of the use of a word which a common understanding would regard as a word of reference used, but used without an object to operate upon, and was therefore used without a meaning.

The eighteenth assignment of error is as follows:

"The court erred in overruling appellant's motion for a new trial (Abstract of the Record, 43–46) for the reasons set forth in appellant's assignments of error 1 to 16, inclusive, and for the reasons set forth in said motion for a new trial."

Turning to the motion for a new trial, we find six separate paragraphs setting forth allegations of more than one ground for a new trial, and each of such alleged grounds is not separately and distinctly stated in the assignment of errors. Hence the assignments of errors relied upon as arising out of the refusal of a new trial are not sufficient as required by paragraph 1261, Civil Code of Arizona of 1913, and by subdivision 2, rule 8, Assignment of Errors (14 Ariz. xliv, 126 Pac. xi). *Miami Copper Co.* v. *Shrohl,* 14 Ariz. 410, 130 Pac. 605. In this particular case the order refusing a new trial upon every ground set forth in the motion is without reversible error. The grounds asserted in the motion have otherwise been stated and considered.

Finding no substantial error on the record, the judgment is affirmed.

ROSS and BAKER, JJ., concur.