[Civil No. 4290. Filed September 30, 1940.]

[105 Pac. (2d) 1115.]

RICHFIELD OIL CORPORATION, a Corporation, Petitioner, v. ARTHUR T. LaPRADE, as Judge of the Superior Court of the State of Arizona in and for the County of Maricopa, Respondent.

Messrs. Woolf & Shute and Mr. W. T. Elsing, for Petitioner.

Messrs. Lewkowitz & Wein, for Respondent.

LOCKWOOD, J.—James O. Jackson, hereinafter called plaintiff, filed a suit in the superior court of Maricopa county against Richfield Oil Corporation,

hereinafter called defendant. On May 15, 1940, defendant moved for an order requiring security for costs to be given by plaintiff. On May 29th plaintiff filed an affidavit of his inability to give such security, and on May 31st established his contention to the satisfaction of the presiding judge. It appeared, however, that plaintiff had employed Herman Lewkowitz and Raymond R. Wein as his attorneys in the action, and that they had accepted such employment upon a fee contingent upon the winning of the suit and payable only out of any judgment that might be obtained therein, and that they had advanced a small amount for plaintiff's court costs, which he was to repay them as he could earn it. Upon this showing, defendant moved that the attorneys be required to give security for the costs or show their inability to do so, and that upon their failure to do one or the other the suit should be dismissed. The presiding judge denied the motion, and defendant has brought the matter before us on a petition for a writ of *mandamus*.

The precise legal question raised by the proceeding is whether when an attorney takes a case for a fee payable only out of the proceeds of any judgment or settlement which he may obtain therein and his client is unable to give security for the costs, the former is obliged to give such security to make proof of his inability to do so, in the same manner as his client, under penalty of having the action dismissed.

█ The question is one of first impression in this court, and the practice has not been uniform in the superior courts of the state. The right to require security for costs has generally been regarded as wholly statutory, except perhaps where the plaintiff was a non-resident. *Ex parte Bennett,* 231 Ala. 223, 164 So. 298; *State ex rel. Macek* v. *Busher,* 46 Ohio App. 148, 187 N. E. 874; *Griffin* v. *Allendale Bank,* 170 S. C. 212, 170 S. E. 149; *Turmelle* v. *Jefferson,* 166 Misc. 70,

2 N. Y. Supp. (2d) 30. Most of the states, including Arizona, have adopted statutes on this subject, and it is held that such a statute is to be regarded as remedial and liberally construed in order to effect its object. *Miami Copper Co.* v. *Strohl,* 14 Ariz. 410, 130 Pac. 605; *Castle* v. *Delta Land & Water Co.,* 58 Utah 137, 197 Pac. 584. Our statute, so far as material, reads as follows:

"3790. *When may be required.* At any time before trial of an issue of law or fact, on motion of the defendant, supported by affidavit showing that the plaintiff is a non-resident of the state, or that the plaintiff is not the owner of property within the state, out of which the costs could be made by execution sale, the court shall order the plaintiff to give bond for the security for the costs of the action. . . . If the plaintiff fail so to do within the time fixed by the court the action shall stand dismissed."

"3791. *Where plaintiff unable to give security.* If the plaintiff is a *bona fide* resident of the state and shall, within five days after the order, make strict proof of his inability to give the security, then the order to give security shall be vacated. . . . "

The issue involved herein has arisen in a number of other jurisdictions and the decisions thereon are not in harmony. A large majority of the federal courts, and some state courts, hold that an attorney taking a case on a contingent fee falls within the terms of such statutes. The reasoning of the courts following this rule is set forth in the case of *United States ex rel. Randolph* v. *Ross,* (6 Cir.) 298 Fed. 64, 66, 33 A. L. R. 728, as follows:

"It would be unfortunate that a deserving plaintiff be denied opportunity to try his case because of his attorney's refusal to furnish security or make excusatory affidavit. But we are disposed to think that in practical effect a much greater evil would result from opening the door to litigation which may or may not prove meritorious, by holding the attorney under a contin-

gent fee, conditioned upon recovery, not within the spirit of the rule invoked below."

The contrary reasoning will be found in the case of *Quittner* v. *Motion Picture Producers, etc.,* (2 Cir.) 70 Fed. (2d) 331, 332, as follows:

"An attorney having a contingent interest in a litigation, as payment for his services, is in a different situation from one having a direct interest in the recovery. . . . There is nothing in the statute which requires the attorney to make such an affidavit. The humane thought underlying the statute is to assist the poor and afford an opportunity to prosecute their just claims where, if they met the costs of litigation, it would be prohibitive. It would conflict with the phrase of the statute and surely with its spirit to say that not only must the litigant who sues show himself to be a pauper, but that his attorney must be found in the same category. The statute was intended for the benefit of those who are too poor to give security for costs; it was not intended to compel pauper lawyers to represent them; it is an affront to the dignity of the profession to think otherwise."

Under the common law, where a person without interest in another's suit undertook to carry it on at his own expense, in whole or in part, in consideration of receiving, in event of success, a part of the proceeds of the litigation, the agreement was champertous and void, and frequently such person was subject to a penalty, and there are many of the older decisions which hold that an agreement by an attorney to furnish services which are to be compensated only from the proceeds of any judgment which he might recover, fails within the same category. In later times, however, this rule has been greatly relaxed in the various states, and we think the modern view is that contracts of the latter nature are not considered champertous, in the absence of a statute expressly making them such. This certainly has been the practice in Arizona for many years, and a very large propor-

tion of our litigation is carried on under such agreements, express or implied. It is, therefore, urged by defendant that since it appears from the record in this case that plaintiff and his counsel entered into a valid agreement whereby the latter should be compensated solely from the proceeds of any judgment or settlement which they might secure if, as, and when they secured it, that they have such an interest in the case as makes them responsible for security for costs under the statute, in the same manner as is the plaintiff himself.

The argument is plausible, but we think not tenable. It will be noted that the statute requires only that the "plaintiff" give this security. The attorneys who take a case on the ordinary contingent fee basis are not parties to the action, nor could they be made parties plaintiff thereto, for while they are "interested" in the *result* of the action, they have no "interest" in the *right of action* itself. The client under such circumstances may settle, compromise or release his claim on such terms as he desires without the consent of the attorneys, or even in defiance of their wishes. They cannot do so without the express consent of the client, except for the full amount of the claim. It is true that if the proceeds of a settlement pass through the hands of plaintiff's attorneys, they have an attorney's lien thereon for the amount of their fee, and in an action against their client for such fee, they might garnish any moneys due him under the settlement which remain in the hands of the defendant, but outside of this they have no method of reaching the money. To say that under such circumstances they have an "interest," in a legal sense, in the cause of action is not true. It is true, of course, that if the attorneys, in addition to having a contract for a contingent fee, have taken an assignment of all or a part of the cause of action itself from their client, the situation would be very different, for in such case they either are or could

be made parties plaintiff to the action itself, and if this be done, they are under the same obligation to give security as is the original plaintiff. There is no evidence in this case, however, that the latter situation existed. We are of the opinion that the trial court, on the record made, properly refused to require counsel for plaintiff to give security for costs, or make showing of their inability to do so under penalty of a dismissal of the action.

The alternative writ of *mandamus* heretofore issued is quashed.

ROSS, C. J., and McALISTER, J., concur.